I'd rather see, yes, the last case this morning, Herrer-Garcia v. Sessions May it please the Court. My name is Maria Baldini-Poterman and I represent Rafael Giovanni Herrera-Garcia. This Court should seriously consider and review the country conditions in the case. While this appeal involves at this time only the deferral of removal under the Convention Against Torture, the conditions in El Salvador are different than when Mr. Herrera actually left the country as a 15-year-old in the midst of a civil war. After remaining in the United States for more than 27 years, he testified before the immigration judge that he feared returning to El Salvador due to the tremendous gang violence that has overtaken the country. The records reflect, and the State Department concurs in its reports, that in 2015 and 2016, El Salvador was the most violent country in the world. It remained thereafter as the most violent country in this hemisphere. And while the board and the immigration judge reviewed some steps that were taken by the Salvadoran government to try to control the gang violence in 2017, the State Department's own, in the Congressional Research Service's own reports, still indicate that the police solve less than 5% of the gangs that are actually reported, and that there is a loathing between the police and prosecutors to conduct the investigations that is contained within the administrative record. There has been no fundamental change in El Salvador since 2015, which the documentation clearly evidenced that the gangs operate with impunity throughout El Salvador. Counsel, let me interrupt and ask you an antecedent question. You know, the board also found that your client hadn't shown past torture, sufficient evidence of past torture. Could you address that? Yes, Your Honor. Mr. Garcia was not previously tortured in El Salvador. And while past torture is noted as one of the factors to consider under the regulations, past torture is not required for the court to review whether there is a probability of future torture. The deferral of removal, Your Honor, differs under the Convention Against Torture from withholding a removal, which has to do with the probability of future persecution and asylum in particular. Mr. Garcia was found not eligible for asylum based on the particularly serious crime finding by the immigration judge. As this court has repeatedly held, and most recently in Estrada Martinez, which we did cite in our jurisdictional statement, this court has found no authority or no jurisdiction to review the particularly serious crime finding. So while Mr. Garcia was not tortured in the past, Your Honor, the conditions that exist in El Salvador are such that he does fear probable torture based on the gangs, as well as corrupt law enforcement. The gangs, as the State Department reported in its February 2017 travel advisory, clearly states that the gangs operate with impunity throughout the country. Are any of those risks particular to him? Yes, Your Honor. I do believe that some of the risks are particular to him. He had last resided in El Salvador in 1990 when he left as a 15-year-old. Amnesty International, in its report, documented that deportees from the United States are targeted by the gangs in El Salvador upon their return. And in fact, one of the articles that we submitted to the which is the area that Mr. Garcia came from and from which he feared returning. Another point, Your Honor, as far as internal relocation, which the immigration judge noted in her decision, was that he had not attempted to internally relocate in 1990 before coming to the United States. That internal relocation, Your Honor, back during the Civil War is not directly relevant to a fear of gangs today in El Salvador. Although I would note that in the record, the FMLN at the time was the guerrilla group during the Civil War in 1990. Today, the FMLN is in charge of the government of El Salvador. So while there was no requirement that he internally relocate as a 15-year-old, and this court has never held that internal relocation is required, I would like to bring the court's attention to the difference between the Rodriguez-Molinero case and El Salvador. As we demonstrated in our brief, El Salvador is the size of a geographical area slightly smaller than New Jersey. Mexico, on the other hand, which this court had reviewed in Rodriguez-Molinero, is a very large country. With respect to could Mr. Garcia-Herrera have relocated to, say, San Salvador? In 2015, San Salvador was the most murderous city in the world. So the issue of internal relocation, Your Honors, when the gangs operate with impunity throughout the entire small country of El Salvador was legal error by the immigration judge, which was then affirmed by the Board of Immigration Appeals. As far as the substantial grounds for believing that he would be in danger of being tortured in El Salvador, and that the government would not be able to protect him from torture, again, the country conditions are clear. The Salvadoran government does not protect deportees or citizens within the country. As a teenager who first came here and then was returning to El Salvador after more than 27 years in the United States, Mr. Garcia does not have the knowledge of El Salvador, as his parents testified to before the immigration court. He would also not be able to remain inside his aunt's house like his parents do when they visit, because as a 43-year-old man with three U.S. citizen children back here in the United States, he himself has to work to support himself. The evidence in the record before the court evidenced that his parents had lost their home during the recession, and that they were renting an apartment. His girlfriend, who is the mother of his three U.S. citizen children, currently has TPS. And as we dropped in a footnote, TPS has now been terminated by the current administration, and it will be ending. So the mother of the children is also at issue in this particular case. So, Your Honors, we submit to this court that the board, in affirming the immigration judge's decision, erred as a matter of fact and as a matter of law in her decision. We request that this convention against torture. Thank you. Ms. Otero? Good morning. May it please the court, Vanessa Otero for the United States. Your Honors, this case is very simple, and it involves only the one issue as to whether or not substantial evidence supports the board and the immigration judge's decision that Petitioner did not satisfy the burden of proof for deferral under the law. And the board's decision and the immigration's decision were sound. If we were to credit Petitioner's arguments made here and made in her reply brief, then it would basically come to a per se cat deferral rule. El Salvador is a violent country. El Salvador does have a lot of crime. But in order to prove your case for cat deferral, you have to prove that you in particular, an alien must have to prove that that person in particular will be tortured by or with the acquiescence of the government or a public official or someone else acting in an official capacity. Now in this case, as Judge Rovner, you pointed out, there is no individualized evidence that this particular person will be tortured in El Salvador by anyone, much less gangs. If he were to have proven... You know, the board's rationale for rejecting the cat relief is pretty sparse, isn't it? I'm sorry? Can you really tell if the board analyzed the record evidence properly and had cogent reasoning here? Yes, Judge Rovner, it did. As this court held in Oriana Areas, which I believe is the case that you want, especially on cat, because the board adopted and affirmed the IJ's decision in this case, cited the relevant pages from the immigration judge's decision in its decision about cat, and that's perfectly legal and fine under the standard. In other words, the board took as its own the IJ's reasoning on cat, and if you look at the immigration judge's decision, there are several pages of analysis concerning the cat decision here. So there's no error there. As I was saying earlier, this particular petitioner has not shown any individualized evidence and hasn't pointed to anything in this particular record that would demonstrate that he himself would be tortured by or with the acquiescence of the government in El Salvador. As far as counsel made a point about the internal relocation finding that the IJ made, that persecution and asylum and withholding of removal claims, which aren't before this court because they've waived them and also can't be reviewed. And on top of it all, the immigration judge also noted within the cat deferral decision that petitioner's family that lives still in the town that he lived in 27 years ago in El Salvador remain there unharmed. So I don't think that there was necessary for him to have made an internal relocation finding because it didn't seem necessary for him to internally relocate to avoid torture because the family remains in that same town unharmed. So if his argument is to be credited, then necessarily everyone that comes from El Salvador is trying to be returning to El Salvador would have a claim under the Convention Against Torture. Thank you. Thank you, counsel. Just two points for a rebuttal. First of all, in response to the government's argument that they remain in the same town, the aunts with whom Mr. Herrera and Mr. Garcia's parents reside are elderly. This was borne out by the testimony by both parents before the immigration judge. They are not a man in his 40s who has to work to support his family and to support himself, importantly. The second point is the government in her presentation now raises an argument that we are requesting a per se rule. This was not raised in the government's briefing. And we ask this court to, again, to review the conditions carefully, the circumstances under which Mr. Garcia has been now returned to El Salvador and grant his petition. Thank you. Thank you to both counsel. The case is taken under advisement and the court will be in recess.